UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

William M.,                                     )
                                                )
          *Plaintiff*,                          )
                                                )
v.                                              )     No. 19 CV 50043
                                                )     Magistrate Judge Lisa A. Jensen
Andrew Marshall Saul,                           )
Commissioner of Social Security,                )
                                                )
          *Defendant*.                          )

**MEMORANDUM OPINION AND ORDER**[1]

In 2015, Plaintiff William M. applied for benefits alleging disabling back pain with an

amended onset of January 1, 2017.[2] In 2018, an administrative law judge (ALJ) found that

Plaintiff was not disabled. Plaintiff was 59 years old at the time of the ALJ's decision. Plaintiff

alleges that the ALJ erred in his listing determination, in the weight he gave to a state agency

physician and in his symptom evaluation.

**I. BACKGROUND**

The medical record is sparse. The principal reason for Plaintiff's alleged disability is his

chronic low back pain that resulted from a fall at work around 2008. However, the medical

records contained in the record begin in 2014. From 2014 to 2017, Plaintiff was seen at Medical

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).
[2] There is some confusion as to which date is the amended onset date. Plaintiff listed January 21, 2015 as the onset date when he first applied for disability benefits. R. 179. At the administrative hearing, Plaintiff's counsel stated the amended onset date was January 1, 2016. R. 39. In his request for review, Plaintiff's amended onset date was January 1, 2017. R. 178. And in his opening brief in this case, he lists January 1, 2019 as his amended onset date. Plaintiff's Brief at 1, Dkt. 23. Given that the ALJ found that Plaintiff engaged in substantial gainful activity until December 31, 2016, the Court presumes the correct amended onset date is January 1, 2017. The Commissioner asserts that date in his brief, Defendant's Response at 9 n.3, Dkt. 28, and Plaintiff does not object to it.

Pain Management by Dr. W. Stephen Minore, APN Kathy Baule, or DNP Daniel R. Green. These medical records contain a summary of treatment that Plaintiff received for his back pain prior to 2014. Specifically, from 2008 through 2011 Plaintiff received seven lumbar epidural steroid injections, one lumbar facet injection and left lumbar radiofrequency ablation. R. 431.

In April of 2014, Plaintiff presented to Medical Pain Management with low back pain that was 5/10 and did not radiate. He had no numbness or tingling. He was losing sleep due to pain. He was taking his OxyContin only every other day due to cost. He was given samples of Lyrica. His Norco was increased to three times per day. OxyContin and Soma were continued. R. 410-11. In August 2014, Plaintiff reported lower back that radiated into his buttock and left leg. The pain was 3/10 but increased to 8/10 with activity. On physical examination, Plaintiff had a positive straight leg raising test on the left to 15 degrees. Left leg had decreased sensation to touch at the L4 and L5 distribution. He had no foot drop or weakness in the extensor halluces longus bilaterally. His current medications were continued. R. 408.

On February 20, 2015, Plaintiff returned to pain management with complaints of increased pain in his low back radiating into his left buttock and now starting to go down into the left posterior thigh. He had associated numbness and tingling. His pain was aggravated by activity, and he stated that he was unable to stand for a prolonged period of time without added discomfort. Plaintiff reported that the pain will get to 9-10/10 at night if he has not taken any pain medication for a while. He was continued on Oxycontin and Norco three times per day. He had been out of Lyrica for approximately a month and requested samples as it was too costly to refill. R. 402.

Plaintiff underwent a consultative examination with Dr. K.P. Ramchandani on June 9, 2015. He rated his pain between a 5 and 10. His pain was aggravated on bending, twisting, lifting

2

and carrying 20 pounds, sitting for 2 hours, standing for 3-4 hours, walking ¼ mile, and on exposure to damp and cold weather. R. 415. Plaintiff's x-ray showed "marked disc space narrowing[,] marginal end plate osteophyte[,] subchondral sclerosis and vacuum phenomenon at L5-L6." R. 424. There was multilevel severe facet arthrosis, grade 1 anterolisthesis at L4-L5 and mild disc space narrowing at the remaining levels. *Id.* On physical exam, he had limitation of movement in his back and straight leg raising bilaterally at 45 degrees. The remaining examination was within normal limits.

In June of 2015, Plaintiff rated his low back pain at 7/10 with radiation down to his left leg. He said that he could only tolerate working 15 hours per week at his current job. R. 431-32. On February 2, 2016, Plaintiff reported 7/10 pain in his lower back and buttock. He had shooting pain down both legs intermittently. Physical examination was positive for spasm in his lower back. His bilateral straight leg test was positive at 20 degrees. Plaintiff was prescribed a Medrol Dose Pack and to continue his other medications, which included OxyContin, Norco, Soma, Naprosyn and Lyrica. R. 460.

Plaintiff returned to pain management on February 25, 2016 to receive a lumbar epidural steroid injection (LESI). He reported pain on each side of his lower back, left worse than right. He also reported having some pain and radiation into the left leg with slight numbness and tingling in his left leg and toes. Pain had increased to 8/10. On physical examination, straight leg raising was positive at 10 degrees on the left. He also had absent ankle jerks bilaterally, decreased sensation on the dorsum of the foot and no weakness of the extensor hallucis longus in either foot. R. 458.

In August 2016, Plaintiff returned to pain management with complaints of low back pain rated at a 9/10 that radiates down his left leg. His pain increases with standing, walking, bending

and lifting. He reported he had been out of pain medication for about 10 days. It was noted that his pain seems to be increasing over the first year he reports. He is unable to work more than part time. His pain medications were continued, and a 15-day course of Prednisone Burst was added to his medication regimen. He reported that he did not want an additional LESI as the last one did not provide significant relief and he could not afford the cost. R. 456.

In December 2016, Plaintiff did not want to pay his copay but eventually paid when he was informed that there would be no visit if there was no copay. He continued to complain of pain in his low back radiating into his left leg to the knee. Pain was an 8/10 aggravated by physical activity and only medications alleviated the pain. His medications were continued. R. 453. Plaintiff returned on April 27, 2017, reporting low back and left buttock pain rated at 7/10. He also had numbness in his toes on both feet. On physical examination, he had limited range of motion of the lumbar spine with tenderness to palpation. No radicular complaints, good strength and normal sensory examination. His medications, including Naprosyn, Lyrica, Soma, OxyContin and Norco, were refilled. R. 450.

### A. State Agency Reviewing Physician Opinions

On November 11, 2015, Phillip Galle, M.D. opined that Plaintiff could occasionally lift and carry 50 pounds; could frequently lift and carry 25 pounds; could stand and/or walk for and sit for about six hours in an eight-hour day; could frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl and could occasionally climb ladders, ropes and scaffolds.

### B. Administrative Hearing

During the administrative hearing on September 19, 2017, Plaintiff, then 58 years old, testified that he was last employed at Meijer as a clerk in the dairy department. He worked part time. He testified that he could not do his job on a full-time basis and that he would miss days of

work if he did his job full time. R. 43. Even on a part-time basis, his pain increased due to working in a cold environment and constant lifting. R. 44. He had to lift such things as a case of milk, which he estimated weighed about 20 pounds. Later, upon examination by his attorney, Plaintiff estimated that these crates of milk weighed 35 pounds. R. 41, 53. Plaintiff worked at Meijer from April 2015 to April 2017. His job at Meijer ended when he came to work under the influence of alcohol. R. 43. Plaintiff testified that he could not sit more than one hour. R. 51. His pain is now constant and as a result he could not even perform a part-time job. R. 52. He reported that he has been seeing Dr. Minore for low back pain since 2007. R. 54. At the time of the hearing, he was taking Naproxen, Lyrica, OxyContin, and Norco. R. 54-55. He could stand unassisted for only ten minutes, walk one-tenth of a mile, and can comfortably lift 15-20 pounds. R. 56. His pain was 7/10 when taking medication and increased to 9/10 without medication. R. 55.

The vocational expert (VE) testified that Plaintiff had past relevant work as a warehouse supervisor, warehouse worker, dump truck operator, and stock clerk. The VE testified that Plaintiff could still perform his past work as a stock clerk as it was actually performed but not as it was generally performed in the Dictionary of Occupational Titles (DOT). He also testified that Plaintiff could perform as a warehouse worker, both generally and actually performed, a warehouse supervisor, generally performed, and a dump truck driver, generally performed. R. 62. The VE was asked if Plaintiff could only lift 20 pounds on an occasional basis, could he perform any past work. The VE answered that he could only perform the warehouse supervisor position generally performed but not actually performed. R. 64.

On April 25, 2018, the ALJ issued his written opinion denying disability benefits. He found that Plaintiff engaged in substantial gainful activity from April 8, 2015 to December 31,

5

2016. R. 24. He then found that Plaintiff was not disabled after the amended onset date of January 1, 2017. Despite finding that Plaintiff's severe lumbar facet arthropathy with spondylosis was a severe impairment, he nonetheless found that Plaintiff could perform medium work as defined in 20 C.F.R. § 404.1567(c) except frequent stooping, crouching, kneeling and balancing; frequent climbing of ramps and stairs; occasional climbing of ladders, ropes and scaffolds; occasional crawling and no work around unprotected heights, heavy equipment and operating machinery. R. 26. The ALJ found that Plaintiff was capable of performing past relevant work as a stock clerk as it was actually performed but not generally performed per the DOT. Plaintiff now appeals the ALJ's decision.

## II. DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be

6

affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, 2014 WL 5475480, at *5-7 (N.D. Ill. Oct. 29, 2014).

Plaintiff has three principal arguments: the ALJ erred in his listing analysis; the ALJ erred in giving substantial weight to the state agency doctor; and the ALJ erred in his symptom evaluation.

### A. Listing Analysis

On appeal, Plaintiff argues that reversal or remand is proper because the ALJ failed to adequately analyze whether his back condition, including severe lumbar facet arthropathy with spondylolisthesis, meets or medically equals the criteria of Listing 1.04(A).

A claimant is eligible for benefits if he has an impairment that meets or equals an impairment found in the listing of impairments. 20 C.F.R. § 404.1520(d). The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 404.1525(a). A claimant may also demonstrate presumptive disability by showing that his impairments are accompanied by symptoms that are equal in severity to those described in a specific listing. 20 C.F.R. § 404.1526(a). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).

Listing 1.04 addresses spinal disorders, including degenerative disc disease, that result in compromise of a nerve root or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Listing 1.04(A) requires "evidence of nerve root compression characterized by neuro-anatomic

distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and if there is involvement of the lower back, positive straight-leg test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).

Here, the ALJ's listing analysis regarding whether Plaintiff met or equaled a listing consisted of the following three-sentence statement:

> With respect to the claimant's back impairment the applicable listing section is 1.04, which requires, among other things, evidence of compromised nerve root with abnormal clinical findings such as motor loss, sensory or reflex loss, and positive straight leg raising. These abnormal findings have not been shown on a consistent basis. The other aspects of section 1.04 have been fully considered and also are not appropriately documented in the record.

R. 26. Plaintiff argues that this is the type of perfunctory analysis that the *Minnick* court found to be inadequate. This court agrees. In *Minnick*, the ALJ merely stated that the plaintiff's degenerative disc disease did not meet or equal Listing 1.04 because "[t]he evidence does not establish the presence of nerve root compression, spinal arachnoiditis, or spinal stenosis resulting in pseudoclaudication, as required by that listing." 775 F.3d at 935. The court in *Minnick* noted that this statement provided no analysis to support the ALJ's conclusion. *Id.* at 935-36 (remanding because the ALJ's two sentence discussion contained "no analysis whatsoever" and was "the very type of perfunctory analysis we have repeatedly found inadequate").

Moreover, the exact language used by the ALJ here was analyzed by the court in *Dock v. Berryhill*, No. 16 CV 50277, 2017 WL 5293901, at *5 (N.D. Ill. Nov. 13, 2017). There the court held that this "three-sentence explanation contains no analysis of the requirements of 1.04A (it merely lists them) and only hints at a broader rationale (lack of consistency)." *Id.* This Court agrees that the ALJ's statement regarding Listing 1.04 is cursory and deficient.

The Commissioner does not contest that the ALJ's analysis was cursory.[3] Instead, the

Commissioner argues that substantial evidence supported the ALJ's listing conclusion because

Plaintiff cannot prove that he suffered from motor loss, which is a required element under Listing

1.04(A). Essentially, the Commissioner is arguing that the ALJ's error was harmless because on

remand Plaintiff would not be able to prove that he met all the elements of Listing 1.04(A). *See*

*Dock*, 2017 WL 5293901, at \*5. An error is harmless only when a court can "predict with great

confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707

(7th Cir. 2013). The Seventh Circuit has remanded where the listing analysis was perfunctory

and there was some evidence indicating that the plaintiff may have met the listings. *See, e.g.*,

*Minnick*, 775 F.3d at 936 ("Minnick's degenerative disc disease may well have satisfied Listing

1.04A."); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Because the only evidence in

the record demonstrated significant limitations in Kastner's range of motion, the ALJ's contrary

conclusion is peculiar and unexplained.").

Here, Plaintiff has not pointed to any evidence that supports motor loss. Nor has this

Court found any such evidence in the medical records. Rather, on each pain management visit

contained in the record, Plaintiff is noted as having normal strength. R. 403, 406, 408, 410, 432,

450, 453, 456, 458, 460. Thus, while the ALJ's listing analysis was perfunctory and thus

deficient, that error was harmless.[4]

### B. Weight afforded to the State Agency Doctors

---

[3] The Commissioner alleges that he is not sure if Plaintiff is arguing that the ALJ's analysis was insufficient and if Plaintiff's reference to *Minnick* was meant to support such an argument that the Court should disregard it because it is not raised with specificity. This Court disagrees with the Commissioner and finds that Plaintiff has raised the argument that the ALJ's listing analysis was perfunctory and inadequate.

[4] Plaintiff's briefs do not set forth an argument supporting that his condition medically equals a listing. Thus, that argument is waived.

Next, Plaintiff argues that the ALJ erred by giving substantial weight to state agency physician Phillip Galle. Dr. Galle opined that Plaintiff could engage in full time, medium work. Dr. Galle's opinion was rendered on November 25, 2015. Plaintiff argues that Dr. Galle's opinion was outdated as he did not have significant treatment records from October 2015 through April of 2017, which Plaintiff alleges demonstrated significant deterioration of Plaintiff's back problem as well as significant additional treatment.

"An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *see also Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). Here, Plaintiff argues that Dr. Galle did not have evidence of his epidural injection in 2016 and that it only provided two weeks of relief. The Commissioner argues that Dr. Galle considered previous epidural injections and cites to Dr. Galle's reference to Plaintiff's history of epidural injections between 2008 and 2011. Plaintiff argues in response that this was a remote history and would allow Dr. Galle to infer improvement. In fact, it appears that that is exactly what Dr. Galle did. He notes that Plaintiff's past back injury "required [treatment] in 2008-2011." R. 84. That is the time period in which he received epidural injections prior to Dr. Galle's review. But review of updated records would reveal that an additional epidural injection was necessary to attempt to relieve increasing pain, to no avail. To the extent that Dr. Galle based his RFC recommendations on his mistaken belief that Plaintiff's back injury last required treatment in 2011, the updated records would have provided significant additional information that could have reasonably changed his opinions.

Moreover, Dr. Galle notes that treatment records that he reviewed indicate that Plaintiff's pain radiates down his left leg "without numbness or tingling." R. 80. Plaintiff points out that updated records reveal that Plaintiff had numbness and tingling in the toes and feet. The Commissioner argues that this evidence is "weak" given normal sensory examinations in February and June 2015 (before Dr. Galle's opinion) and early-February and April 2017. Defendant's Response at 11, Dkt. 28. However, the significance of these findings requires a doctor's interpretation. This is especially true here given that Dr. Galle placed significance on the fact that records he reviewed did not contain evidence of numbness and tingling. Thus, this is an additional basis upon which to conclude that the updated records may reasonably change Dr. Galle's opinions.

This Court's review of the medical records subsequent to Dr. Galle's review reveals additional evidence that may be significant especially given that Dr. Galle opined that Plaintiff could engage in full time, medium work. Those records reveal that Plaintiff continued to require significant doses of narcotic medications to attempt to control his pain for over one and a half years after Dr. Galle's review. Plaintiff's pain increased to the point that two new types of medication were added to Plaintiff's medication regimen – Medrol Dose Pak and Prednisone Burst. Plaintiff developed absent ankle jerks bilaterally as well as back spasms. Plaintiff's straight leg raising was positive at 20 degrees on February 2, 2016 and then worsened to 10 degrees on the left in February 25, 2016. The Commissioner argues that Dr. Galle was already aware that Plaintiff had a positive straight leg raise test in August of 2014. However, in reviewing the list of records that Dr. Galle reviewed it is not clear that he was provided this record as it is not listed, and he does not discuss it. As such, this additional evidence reasonably

11

could have changed Dr. Galle' s opinion that Plaintiff could engage in medium work on a full-

time basis.

The Commissioner cites *Trammel v. Colvin*, No. 12 CV 6780, 2014 WL 1227565, at *6-7

(N.D. Ill. Mar. 25, 2014) in support of its argument that the mere fact that examinations exist

with positive findings after a state agency reviews records does not mean that the ALJ cannot

rely on the reviewer's opinions to craft the RFC. In *Trammel*, the court did not remand for a new

state agency review because the ALJ had considered the more recent test results "at length" in

evaluating Trammell's RFC. *Id.* at *6. However, *Trammel* predates the Seventh Circuit's opinion

in *Moreno*, which teaches that the ALJ should not rely on outdated assessments where new

evidence reasonably could have changed the reviewing physicians opinion, and such faulty

reliance is not mitigated by "the ALJ's own assessment of the more recent records." *Moreno*,

882 F.3d at 729-30.

Moreover, here the ALJ did not consider the subsequent records at length. In fact, he did

not even mention in his decision many of the findings contained in those additional records. For

example, there is no discussion of the new and worsening straight leg raising test results and no

mention of the new finding of absent ankle jerks bilaterally. In addition, the ALJ states that for

several years Plaintiff was prescribed the same medication without noting that in 2016, because

of increased pain, two new medications were tried. He does not note the findings of numbness

and tingling or of muscle spasms. Therefore, it does not appear that the ALJ factored these new

records into formulating his RFC. Rather, it appears that the ALJ in summarizing the medical

records cherry-picked the evidence that supported his RFC, while failing to mention or

discounting the evidence that may support a more limited RFC. *Denton v. Astrue*, 596 F.3d 419,

425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and

cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

For these reasons, the Court agrees with Plaintiff that a remand is warranted so that a review of all the medical records can take place and be considered in formulating Plaintiff's RFC. This Court is not recommending or opining that a different RFC should be found. However, because Plaintiff was over 55 years old as of the amended onset date, a change in his RFC could result in an award of disability benefits pursuant to Rules 202.04 and 202.06 of the Medical-Vocational Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2, Table No. 2, Rules 202.04 and 202.06. Thus, a fresh look with up to date medical records is required.

### C. Symptoms Evaluation .

While this Court is remanding to allow for review of updated medical records, on remand a new symptom evaluation will occur, and thus this Court notes the following concerns with the ALJ's symptom evaluation.

### 1. Conservative Treatment

The ALJ relied on Plaintiff's treatment course in part to discount Plaintiff's symptoms. The ALJ noted:

> Although the claimant has severe impairments, the treatment course does not support greater restriction. As noted in the discussion, he last had an epidural approximately two years ago and the documented effect of long-term opiate medications is nil. He has not received referral for orthopedic or neurological work-up, or even physical therapy.

R. 28. The ALJ later specifically referred to Plaintiff's treatment as "conservative." *Id.* This rational is problematic.

First, the ALJ does not explain how the receipt of eight LESI procedures, a right lumbar facet injection, a left lumbar radiofrequency ablation, followed by attempts to control chronic

13

pain by narcotic and steroidal pain medicine is conservative.[5] *See, e.g., Huber v. Berryhill*, 732 F. App'x 451,456-57 (7th Cir. 2018) (finding "misguided" the ALJ's conclusion that claimant's treatment was conservative where it included radiofrequency ablation); *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) (suggesting that the prescription of narcotic pain relievers indicates aggressive treatment.)

In addition, the ALJ does not rely on medical testimony to support his concussion that Plaintiff's treatment was conservative. *See McCulley v. Berryhill*, No. 13 C 6031, 2019 WL 1292982, at *7 (N.D. Ill. Mar. 20, 2019). Nor did the ALJ identify any expert testimony indicting any more aggressive treatment was available for Plaintiff. *See Wenzel v. Colvin*, No. 2:13-CV-433-JEM, 2015 WL 880581, at *7 (N.D. Ind. Feb. 27, 2015) ("The ALJ may consider conservative treatment in assessing the severity of a condition, but should cite medical evidence about what kind of treatment would be appropriate.") (internal quotation marks and citation omitted); *Thomas v. Colvin*, No. 13 C 3686, 2015 WL 515240, at *4 (N.D. Ill. Feb. 6, 2015) ("Merely characterizing treatment as conservative fails to consider whether options would have been available and appropriate for Thomas' myriad impairments.") (internal quotation marks and citation omitted).

Even if more aggressive treatment was available and appropriate, the ALJ did not consider possible reasons for the lack of such treatment. *See* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) ("However, such evidence should not negatively affect

---

[5] The ALJ's opinion does not even recount Plaintiff's radiofrequency ablation, or the trials of steroidal medications making it unclear if he was even aware of it.

an individual's credibility if there are good reasons for the failure to complete the plan."). An

ALJ may need to question the plaintiff at the administrative hearing to determine whether there

are good reasons why he did not seek treatment in a manner consistent with his pain complaints.

*See Murphy*, 759 F.3d at 816. Good reasons could include a lack of health insurance or that the

plaintiff cannot afford the treatment. *See* SSR 16-3p, 2017 WL 5180304, at *9.

      Here, the Commissioner is correct that Plaintiff did have health insurance. However,

there are several instances set forth in the medical records where Plaintiff expressed financial

concern or an inability to pay. He stated several times that he could not afford Lyrica and even

requested free samples. R. 402, 410. The ALJ discounted Plaintiff's pain because he only had

one pain injection in 2016 and because he did not go to the emergency room when he ran out of

pain medication. But Plaintiff stated to his medical provider that the cost of the pain injection

was too much. R. 456. There was also an instance where Plaintiff did not want to pay the copay

for an office visit but reluctantly paid after he was told that a copay was required for the visit. R.

453. Thus, there are several instances noted in the medical records where Plaintiff expressed

financial concern or an inability to pay. Yet, this fact appears nowhere in the ALJ's decision and

he never questioned Plaintiff as to why he did not see a specialist or go to the emergency room

after running out of pain medications.

      The Commissioner argues that this point is irrelevant because the ALJ relied on the fact

that Plaintiff's providers never recommended a referral to specialized care, not that Plaintiff did

not seek such treatment. However, if true, the ALJ played doctor by "impermissibly

substitut[ing] [his] personal observations for the considered judgment of medical professionals."

*Schomas*, 732 F.3d at 709. As set forth above, there is no testimony or record evidence that any

further treatment other than pain medications and injections were available to treat Plaintiff's

pain. In addition, the ALJ's opinion fails to discuss why the treatment history including

radiofrequency ablation and long-term use of strong narcotic medication does not bolster

Plaintiff's credibility rather than militate against it. As the court in *Huber* noted, treatment such

as radiofrequency ablation bolsters a claimant's pain allegations rather than diminished them.

*Huber*, 732 F. App'x at 456-57; s*ee also Goble v. Astrue,* 385 F. App'x. 588, 591 (7th Cir. 2010)

("We have deemed it improbable that a claimant would undergo pain-treatment procedures such

as heavy doses of strong drugs in order to increase chances of obtaining disability benefits or that

doctors would prescribe these treatments if they thought she were faking."). On remand, if the

ALJ relies on Plaintiff's course of treatment to discount Plaintiff's symptoms, these factors

should be addressed.

### 2. Past Part-Time Work

The ALJ relied in part on Plaintiff's past, part-time work in order to discount his

allegations of disabling pain. An ALJ may consider a claimant's part-time work if it is

inconsistent with his subjective symptoms or statements. *See Berger*, 516 F.3d at 546 ("Although

the diminished number of hours per week indicated that Berger was not at his best, the fact that

he could perform some work cuts against his claim that he was totally disabled."). However, the

Seventh Circuit has "cautioned ALJs not to draw conclusions about a claimant's ability to work

full time based on part-time employment." *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir.

2017); *see also Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) (finding that the ALJ did not

explain any perceived inconsistencies and how the claimant's brief, part-time employment

supports the conclusion that she was able to work a full-time job); *Larson v. Astrue*, 615 F.3d

744, 752 (7th Cir. 2010) ("There is a significant difference between being able to work a few

hours a week and having the capacity to work full time."). These cases caution ALJs not to assume that an ability to perform part-time work means an ability to perform full-time work.

Here, the ALJ did not explain how Plaintiff's past, part-time work was inconsistent with his complaints. The ALJ stated that "[a]s far as whether his impairments would be expected to cause symptoms of the intensity, frequency and restrictiveness that he asserted, he advised the undersigned at hearing that he only comfortably could lift and carry 15-20 pounds, even though the job he had been doing for two years required frequent lifting and carrying of 25 pounds." R. 28. However, Plaintiff also testified at the hearing, as well as reported to his physicians, that his pain was intensified with lifting. This increased pain resulted in the need for strong narcotic pain medications. The ALJ does not explain how his statement that he could only "comfortably" lift and carry 15-20 pounds is inconsistent with his frequently lifting 25 pounds on a part-time basis with resulting significant pain. R. 28. On remand, if the ALJ relies on Plaintiff's past, part-time work to discount his subjective complaints, he must build a logical bridge between such part-time work and the symptoms alleged. *See Berger*, 516 F.3d at 544 (finding that an ALJ must "build an accurate and logical bridge from the evidence to the conclusion").

Finally, the ALJ discounted Plaintiff's statement that he was not able to sit for extended periods of time because "a nurse practitioner specifically commented that he did not shift after sitting in one position for an extended interval." R. 28. The ALJ cited to a December 9, 2016 medical record wherein the nurse practitioner noted that Plaintiff was "able to sit in one position w/o shifting weight." R. 452. However, there is no indication that the ALJ considered how long Plaintiff saw the nurse practitioner or, more importantly, how long he was sitting during that office visit. Plaintiff testified that he could sit for about an hour before his pain forced him to stand up. R. 51. The nurse practitioner's note that Plaintiff sat in one position without shifting

17

weight would only be inconsistent with Plaintiff's testimony if Plaintiff was sitting for more than one hour. The record does not answer that question. On remand, if the ALJ chooses to rely on this record in his symptom evaluation he should question Plaintiff as to the length of his visits with this nurse practitioner or otherwise further explore this issue.

### III. CONCLUSION

For these reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the case is reversed and remanded to the Commissioner for further proceedings consistent with this Opinion.

Date: August 12, 2020                          By:    _____
                                                      Lisa A. Jensen
                                                      United States Magistrate Judge

18